Jones National Bank et al. v. Allen Price et al.

Filed June 29, 1893.    No. 4956.

**Statute of Frauds:** Parol Contract for Payment of Money on Resale of Land. A parol contract between a plaintiff and defendant provided: That the plaintiff should enter his voluntary appearance to a suit then pending, to foreclose a mortgage on real estate owned by him and waive the nine months' stay of sale of the premises allowed him by law; in consideration of which, defendant should bid in said premises at the sale under the foreclosure proceedings at the amount of the decree, interest, and costs, resell the same at private sale, and pay to plaintiff the amount realized in excess of the bid. *Held*, A valid contract and not within the statute of frauds, sec. 3, ch. 32, Comp. Stats.

Error from the district court of Seward county. Tried below before Bates, J.

*E. P. Smith*, for plaintiffs in error.

*George H. Terwilliger* and *R. P. Anderson, contra.*

Ragan, C.

Allen and Louisa Price sued the Jones National Bank, H. T. Jones, its cashier, and M. A. Butler in the district court of Seward county, and in their petition alleged: That on the 18th day of September, 1886, the plaintiffs were the owners of certain real estate in the city of Seward, Nebraska, and occupied the premises as a residence; that they were at that time incumbered by a mortgage given by the plaintiffs to the defendant Butler to secure the payment of $2,000, with interest at the rate of ten per cent from September 23, 1885, and due six months afterwards; that although the note and mortgage were made payable to Butler, they were in fact given to secure the payment of money borrowed of or through the defendant, the Jones National Bank; that the plaintiffs had paid the defendants interest

on the loan at the rate of fifteen per cent; that the defendants had represented to plaintiffs that the money due on the note and mortgage was due to the Jones National Bank, and that plaintiffs should have additional time for the payment of said note and mortgage, provided the interest thereon was promptly and fully paid; that on the 23d of September, 1886, Butler assigned the note and mortgage to one Samuel Grey, and on the 18th day of September, 1886, a petition was filed in the name of said Grey in the United States circuit court in the city of Omaha, Nebraska, against the plaintiffs for the purpose of obtaining a judgment against plaintiffs on said note and mortgage and a decree of foreclosure and sale of said mortgaged premises; that at that time interest on said mortgage had been fully paid; that subsequent to the filing of the said petition in the United States court the defendant Jones made a verbal agreement with the plaintiffs that if they would acknowledge service of summons and waive their right to a stay of order of sale in the proceedings in the federal court that the plaintiffs should be held exempt from the payment of any fees whatsoever for the service of said summons; that no attorney's fees should be taxed against said plaintiffs or paid out of the proceeds of the sale of the aforesaid property under said foreclosure suit; and that he, Jones, would buy in said premises at the sale thereof, for the actual amount necessary to satisfy the amounts due on said note and mortgage and necessary costs of suit in said court, and that he, the said defendant Jones, would then sell said premises at private sale and pay the plaintiffs the excess of the proceeds received at such private sale over and above the amount of decree, interest, and costs that might be rendered in said suit in said federal court; that in pursuance of this agreement, plaintiffs acknowledged service of summons and entered their voluntary appearance in said suit in the federal court and agreed with the defendant Jones to waive their stay of the order of sale in said case; that on the 5th day of November, 1886, a de-

cree was rendered in the federal court in said case for the sum of $2,050 and costs of suit, with a decree of foreclosure and order of sale; that the plaintiffs, in pursuance of their agreement with Jones, waived their stay of the order of sale, and on the 15th day of January, 1887, said premises were duly sold under the decree of the said federal court, and bid in by the said defendant Jones at the sum of $2,391.31, and by officers of said court said premises were duly conveyed to the said defendant Jones; that out of the purchase price of said real estate said Jones paid out an attorney's fee of $205, taxed as part of the costs in said suit; that on the 4th day of May, 1887, Jones sold and conveyed the said premises to another party and received for said premises the sum of $2,700 in cash; that the rental value of the premises at the time plaintiffs waived their stay of order of sale under said decree, was $20 per month, and that at the time of the bringing of the suit in the federal court, the said defendant, the Jones National Bank, and H. T. Jones were the true owners of the note and mortgage foreclosed in the name of said Grey, and that the assignment to said Grey was then intended to place the same under the jurisdiction of the federal court, and with intent to defraud the plaintiffs; and that the agreement made between the plaintiffs and the said Jones was not made in good faith on the part of defendants, but with intent to mislead and defraud the plaintiffs out of their right to the possession and use of said premises pending the stay of the order of sale; that there was due to the plaintiffs from the defendants the sum of $513.69 and interest thereon from the 4th day of May, 1887. This sum, the plaintiffs alleged, was composed of the $205 attorney's fees, paid by Jones out of the proceeds of the sale of said land, contrary to his agreement with plaintiffs, and the further sum of $308.69, the difference between the proceeds of the sale received by Jones, and the amount of the decree, interest and costs, including the attorney's fee in

the case in the federal court. The prayer was for judgment against the defendants for $513.69 and seven per cent interest from the 4th day of May, 1887, and costs of suit.

The verdict and judgment were for the plaintiffs, and the defendants bring the case here for review.

The first error assigned is that the petition does not state a cause of action; and this error is predicated on the theory that the contract alleged in the petition is void under the statute of frauds.

Section 3, chapter 32, Compiled Statutes, provides: "No estate or interest in land, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, or surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same.", The question then is whether the contract set out in the petition is within this statute.

In *Byers v. Locke*, 93 Cal., 493, it is said, an agreement that the defendant should provide the necessary money to redeem the property of the plaintiff which had been sold under a foreclosure, and that for the purpose of enabling defendant to do so, plaintiff would convey the premises to the defendant, to be held by him until such time as they might be sold, is not an agreement for the sale of land or any interest therein.

In *Miller v. Kendig*, 55 Ia., 174, it is said: "A parol agreement by the grantee of land that in case he sells the land for more than the price paid, one-half the excess shall be paid to the grantor, does not create an interest in real estate, and is not within the statute of frauds."

In *Hess v. Fox*, 10 Wend. [N. Y.], 437, it is said: "An agreement by a mortgagee to sell mortgaged premises, the equity of redemption in which is released by the mortgagor, and after deducting the amount due to himself to

pay the surplus of such sale to the mortgagor, is not void as within the statute of frauds, and after sale of the premises for more than enough to satisfy the debt due to the mortgagee, the mortgagor may maintain assumpsit for the surplus."

In *Price v. Sturgis*, 44 Cal., 591, it is said: "A verbal agreement made by grantee when he buys land and receives a deed therefor, to pay the grantor a further sum of money as a part of the price, out of the proceeds of the sale of the land when he sells it, is valid, and the statute of frauds does not require it to be in writing. Such a contract is not for the conveyance of land, but for the payment of a certain sum of money upon the happening of a certain event."

In *McOuat v. Cathcart*, 84 Ind., 567, it is said: "A contract whereby a mortgagee agrees that in consideration that the mortgagor will permit a foreclosure and pay the costs and attorney's fees, he will bid in the land for the full amount of the debt, is not within the statute of frauds and will be enforced."

The contract upon which this action is based is not one for the sale of land or for the creation of any interest therein. To enforce it would not be to create a trust or power over or concerning lands, or relating thereto. This action is merely for the payment of the money agreed upon as a consideration for which the plaintiffs entered their voluntary appearance and waived their defense to the foreclosure suit in the federal court, and surrendered their possession of the premises for nine months by not asking a stay of sale for the time allowed them to redeem from decree. It is not every agreement relating to the sale of lands that is within the statute of frauds; only such agreements are within the statute as are intended to create an interest in lands. In the case at bar the plaintiffs did not actually convey the land to the defendants, but it is alleged in the petition that the defendants were, in fact, the

owners of the mortgage being foreclosed ; that it was tainted
with usury, and that in consideration of the promises of
the defendants, plaintiffs entered their appearance to the
foreclosure suit, and consented that decree might be taken
as prayed for. We do not see that this case is different
in principle from those cited above. The petition states a
cause of action and the contract set out therein is not within
the statute of frauds.

The second error alleged is that the court erred in per-
mitting the evidence to go to the jury that the mortgage
foreclosed in the federal court was tainted with usury ; that
neither Butler nor Grey was ever in fact the owner of the
mortgage, but that the same was at all times owned by the
Jones National Bank. The ground of the objection to this
testimony is that it assailed the findings and decree of the
federal court in the foreclosure suit. We do not so regard
the effect of the testimony. No effort was made either in
the pleadings or evidence by the plaintiffs below to contest
the jurisdiction of the federal court or to in any manner,
impeach the decree rendered by it. In fact, the bringing
of this action by the plaintiffs is a ratification by them of
everything done by that decree. It was competent for the
parties to show that the original note and mortgage fore-
closed in the federal court were tainted with usury ; that
they were in fact owned by the defendants and not by Grey,
the man in whose name the foreclosure suit was brought.
These facts tended to corroborate the claim of the plaintiffs
that the contract was made with them by the defendants as
pleaded. This evidence tended to show a consideration and
a reason for the making of the contract on the part of the
defendants.

The third error assigned is that the plaintiff Mrs. Price
was permitted to testify that her husband had told her of
the agreement he had made with the defendant Jones. If
this evidence was hearsay it remains to be said that Mrs.
Price was examined in chief by her counsel and nothing

was asked her in that examination as to what, if anything, her husband had told her as to the contract he had made with Jones.  On her cross-examination the counsel for plaintiffs in error asked her these questions:

Q. Harry (Jones) told you, as I understand, that he wanted his money back, and that was all he wanted and you should have the balance?

A. Yes, sir.

Q. That is, the money he wanted back and the interest?

A. I believe so.

Q. You was to have the balance?

A. Yes, sir.

Q. Mr. Price told you that same thing?

A. It was talked over.

Q. Did he tell you that same thing before that, that all Harry wanted was to get their money back?

A. That was what I understood all the time.

Q. The overplus you were to have?

A. Yes, sir.

On redirect examination of this witness she was then asked:

Q. Your husband had told you about this agreement?

A. He had told me; yes, sir.

Q. Mr. Price did and transacted all this business for you?

A. Yes, sir, as my husband.

Q. State to the jury what Mr. Price told you, if anything, as to the agreement between him and Harry Jones as to you receiving any balance that might be remaining out of the money received from the sale of the property after his debt was paid.

A. He told me that the place should go to sale and sell it, and all over and above the mortgage that the place brought would be ours.

This is the substance of the testimony, to the introduction of which objection was made by the plaintiffs in error;

and inasmuch as they called out this matter themselves in their cross-examination of the witness, they are in no position to object to it now as incompetent. Furthermore, the evidence excepted to under the circumstances was not prejudicial to the plaintiffs in error, if hearsay.

The final contention of the plaintiffs in error is that the verdict is contrary to the evidence. The evidence satisfies us that the mortgage foreclosed in the federal court was at the time in fact owned by the defendants; that it was assigned to Grey and foreclosed in his name without his knowledge and for the purpose of cutting off the defense of usury with which the mortgage was tainted, and which defense the plaintiffs in error feared would be introduced if suit were brought in the state court; that the money paid into the federal court for the purchase of the land, except the costs of the case, was returned to plaintiffs in error. As to whether the contract set out in the petition was actually entered into between plaintiffs in error and defendants in error the evidence is conflicting. It was a question fairly submitted to the jury. They have found in their verdict that such a contract was made and the evidence supports that finding, and we cannot disturb it.

The verdict, however, is too large by $205 and interest, the amount of the attorney's fee taxed by the federal court as part of the costs in the foreclosure case. Defendants in error have permission to file in this court in twenty days a remittitur of $285.86, as of date of the judgment in the district court, and thereupon the judgment of the district court will be affirmed. Should such remittitur not be filed the judgment will be reversed and the case remanded.

JUDGMENT ACCORDINGLY.

THE other commissioners concur.